J-S56007-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FRANCIS ORDEAN REESE | |
| Appellant | No. 657 MDA 2014 |

Appeal from the Order October 18, 2012
In the Court of Common Pleas of Adams County
Criminal Division at No(s): CP-01-CR-0000313-1996

BEFORE:  PANELLA, J., WECHT, J., and PLATT, J.[*]

JUDGMENT ORDER BY PANELLA, J.               **FILED OCTOBER 29, 2014**

Appellant, Francis Ordean Reese, appeals *pro se* from the order entered by the Honorable John D. Kuhn, Court of Common Pleas of Adams County, that dismissed Ordean's serial petition for relief pursuant to the Post Conviction Relief Act ("PCRA").  After careful review, we affirm.

Given our disposition of this appeal, a detailed factual and procedural history is unnecessary.  Reese was convicted of multiple crimes arising from the rape of a seventeen year-old victim.  On March 3, 1998, the trial court sentenced Reese to a term of imprisonment of 10 to 20 years, and after a remand from this Court, re-sentenced him on August 3, 1999, to a term of imprisonment of 8 to 20 years.  Reese subsequently filed his first petition

_____

[*] Retired Senior Judge assigned to the Superior Court.

pursuant to the PCRA, the denial of which was affirmed by this Court on April 23, 2004.

Subsequently, Reese filed a *pro se* motion for post-conviction DNA testing. Reese continued to file other requests for post-conviction relief while this motion was pending. Ultimately, the DNA testing requested by Reese was performed, with the result being that no blood or semen was found on the samples. Reese then filed a *pro se* Motion to Dismiss Based on Newly Discovered Evidence. The PCRA court denied all of Reese's pending requests and noted that Reese's request for DNA testing had been *de facto* granted. Reese filed an appeal from this order, and the trial court ordered Reese to file a statement pursuant to Pa.R.A.P., Rule 1925(b). This Court affirmed based on Reese's failure to file a 1925(b) statement. However, the PCRA court, upon agreement of the parties, subsequently found that Reese had never received its order directing the filing of the 1925(b) statement, and reinstated Reese's appellate rights. Reese then filed the appeal currently before us.

On appeal, Reese raises the following issues for our review:

A. Whether the Commonwealth PCRA court's dismissal of Appellant's PCRA is supported by the record and free from legal error, where Appellant put forth evidence that an expert would have answered questions, as a medical expert, pertaining to any tangible evidence found or trauma to the alleged affected area of the victim in question?

B. Whether the Commonwealth PCRA Court's dismissal of Appellant's PCRA is supported and free from legal error, in denying further DNA testing that would have excluded Appellant from the alleged criminal acts in question?

C. Whether the Commonwealth PCRA court's dismissal of Appellant's ineffectiveness of counsel claim is free from legal error and supported by the record, where Appellant put forth evidence that due to counsel's lack of representation did cause a substantial negative outcome throughout his court proceedings?

D. Whether the Commonwealth PCRA court denied Appellant his procedural due process, substantive due process, by misapplying procedural case law and standards, is free from legal error and supported by the record?

E. Whether the Commonwealth court continuously denied Appellant the protection of the Double Jeopardy Clause, is supported by the record and free from legal error, where Appellant put forth evidence where the Commonwealth courts have and still is denying Appellant his right from Double Jeopardy violations as he was convicted of a lesser included offense, which bars further prosecutions on remaining indictments?

Appellant's Brief, at 4.

Our standard of review regarding a PCRA court's denial of a petition for post-conviction relief is well settled. We examine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *See Commonwealth v. Smith*, 995 A.2d 1143, 1149 (Pa. 2010). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *See id*. Our scope of review is limited to the findings of the PCRA court and the evidence of record. *See Commonwealth v. Burkett*, 5 A.3d 1260, 1267 (Pa. Super. 2010).

After review of the briefs of the parties, the voluminous record, and Judge Kuhn's comprehensive and thorough opinion dated October 18, 2012, we affirm the order based upon Judge Kuhn's opinion.

Order affirmed. Jurisdiction relinquished.

- 3 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2014

IN THE COURT OF COMMON PLEAS OF ADAMS COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH

v.

FRANCIS O. REESE

CR-313-1996

**MEMORANDUM OPINION**

Before the Court for disposition is Defendant's Motion For Post-Conviction DNA

Testing filed July 19, 2007, and several other matters presented by Defendant. For reasons

set forth herein, all requests for relief are denied.

## BACKGROUND[1]

On March 4, 1996, Defendant (age 46) was charged for the sexual assault[2] of his

niece, K.G. (age 17), two days earlier. The victim had been examined at the emergency

room of Gettysburg Hospital after reporting the incident. Initially, Defendant was

represented by Assistant Public Defender Anthony Miley. During a bail hearing on May 21,

1996, Defendant requested DNA testing. At that time, the Commonwealth advised that lab

reports indicate that not enough semen was present for testing. On September 17, 1996,

then President Judge Oscar F. Spicer[3] directed the Commonwealth to make the rape kit

available to defense counsel.

On May 19, 1997, the Public Defender's Office was discharged from representing

Defendant due to a conflict of interest. On July 3, 1997, Terry P. Blynn, Esquire was

appointed to represent Defendant.

---

[1] This case has a long and tortured procedural history. The Background has been reduced to a discussion of those filings and events deemed relevant solely to the issues the Court believes are currently being pursued by Defendant.

[2] Rape, Sexual Assault, Involuntary Deviate Sexual Intercourse, Aggravated Indecent Assault, Incest.

[3] Judge Spicer was subject to mandatory retirement at the end of 2001 and, therefore, is no longer available to preside over the current matter.

1



On July 7, 1997, Judge Spicer granted Defendant's Petition for Court Order to Permit Interview of Examining Doctor and Nurse at Gettysburg Hospital. The next day, counsel issued subpoenas for Dr. John Dufendach (the emergency room physical) and Susan Witushynsky, R.N. to appear at trial. Defendant appeared before the Court on July 10, 1997, and his attorney indicated that the defense expert report states that "no seminal fluid was found." [N.T. 9 – 7/10/97].

Trial commenced on August 20, 1997. K.G. testified that Defendant offered to give her a ride home on the day in question but instead stopped his vehicle along an isolated dirt road. She reported that Defendant penetrated her either vaginally or anally (she was not sure which) and she did not know if he had ejaculated. [N.T. 38-40; 8/20/97].[4] Nicholas Bloschichak, a trooper with the Pennsylvania State Police, testified that the rape kit was evaluated at the State Police laboratory and no incriminating evidence was discovered. [N.T. 97, 105-6; 8/20/97]. The jury entered a guilty verdict as to the charge of Indecent Assault, but were deadlocked on the charge of Rape and Sexual Assault.[5]

The Commonwealth elected to re-try Defendant on the two deadlocked charges. Trial commenced January 14, 1998. This time, K.G. testified that Defendant "stuck his penis inside me" [N.T. 42] but was not sure where, although she believed it was her vagina [N.T. 44]. She initially testified that Defendant "did ejaculate" [N.T. 44] but later acknowledged that she told Trooper Bloschichak and Dr. Dufendach that she did not know if he ejaculated [N.T. 68-74]. Again, the trooper testified that the rape kit produced no evidence. [N.T. 97]. The jury found Defendant guilty of both Rape and Sexual Assault.

On March 3, 1998, Defendant was sentenced to a period of incarceration of 10-20 years. Defendant appealed. In his Rule 1925 Opinion, Judge Spicer noted,

---

[4] During the preliminary hearing, K.G. testified that Defendant penetrated her "from behind" [N.T. 10-11] and that she was not sure if he ejaculated [N.T. 24].

[5] The Commonwealth withdrew the charges of Involuntary Deviate Sexual Intercourse and Incest on the second day of trial.

The other persistent argument is that [District Attorney] has somehow deprived defendant of potentially exculpatory evidence. Despite the fact that two laboratory analysis, one by the Commonwealth and one by an expert appointed for defendant, included no seminal fluid or other basis for a DNA test, defendant argues that a statement by the initial physician, to the effect that the doctor saw something that looked like it might be seminal fluid, should be construed as proof. While the argument might resemble wishful thinking, more than reason and logic, there is also a dissembling aspect. (Page 8).

On December 3, 1998, Superior Court noted,

Finally, appellant argues that the Commonwealth destroyed physical evidence that could have been exculpatory. The victim's clothing was destroyed by the H Troop Crime Laboratory after it was determined that there was no evidence on the clothing. Appellant has failed to show that any prejudice resulted from his inability to examine the clothing . . . While the crime laboratory determined there was no evidence on the clothing, both prosecution and defense experts had the opportunity to examine the rape kit. No evidence of seminal fluid was found. Appellant has asserted no reasonable basis to believe that seminal fluid existed on the clothing. We find no error. (p. 17-18).

Nevertheless, Superior Court remanded the case for re-sentencing after ruling that the trial court should not have imposed incarceration pursuant to mandatory provisions of 42 Pa. C.S.A. §9714.

Defendant was re-sentenced on August 3, 1999 to a period of incarceration of 8-20 years.

On October 10, 1999, Defendant filed his first PCRA motion wherein he claimed that Attorney Miley was aware that DNA evidence had been destroyed and that other exculpatory evidence had either been destroyed or concealed by the Commonwealth. At that time, he attached several documents including:

1. A report dated March 10, 1997, addressed to Attorney Miley from Relia Gene Technologies, Inc., indicating that pubic hairs, vaginal swabs and smears, rectal swabs and smears, head hair and saliva of K.G. had been examined and no spermatozoa was found. (Exhibit G).

3

2. The Pennsylvania State Police lab report dated May 21, 1996, indicating that pubic hairs, rectal and anal swabs and smears, head hair, saliva, panties, bra, sweatpants and t-shirt were examined and no seminal fluid detected. (Exhibit H).

3. Gettysburg Hospital Report dated March 4, 1996, and signed by Dr. Dufendach which indicated that a pelvic examination of K.G. revealed some dried white material on pubic hair just below the vagina and/or a whitish vaginal discharge.

The case was assigned to visiting Senior Judge G. Thomas Gates who appointed R. Mark Thomas, Esquire to represent Defendant. Five months later, Defendant claimed that Attorney Thomas was ineffective. On June 6, 2000, a hearing on the PCRA motion was held and on October 18, 2000, Judge Gates denied the motion.

Two issues discussed by Judge Gates are relevant to the current proceeding. First, Defendant contended that Attorney Miley was ineffective for not filing motions to compel the Commonwealth to preserve the victim's clothing. The Court noted that this issue was addressed by Superior Court on December 3, 1998, and could not be re-litigated.[6] Second, Defendant argued that trial counsel, Attorney Blynn, was ineffective for not calling Dr. Dufendach as a witness to indicate that there was no evidence of trauma on K.G.'s body. Judge Gates found this claim to be meritless because injury is not required to establish Rape.[7]

Defendant filed a timely appeal but petitioned to proceed pro se. Superior Court discharged Attorney Thomas on January 11, 2001, but subsequently on November 30, 2001, remanded for a waiver of counsel hearing. On March 20, 2002, Senior Judge Barry E. Feudale was appointed to preside over the matter. On April 11, 2002, Ross Pifer, Esquire was appointed to represent Defendant.

[6] Page 3.
[7] Page 5.

4

In the meantime, on January 11, 2002, Defendant filed a pro se document entitled Supplemental Issues and After Discovered Evidence In Support of Post Conviction Collateral Relief Act Petition. Attached thereto were the following exhibits:

1. An Investigation Questionnaire addressed to and purportedly answered on July 9, 2001, by Catherine Green, K.G.'s grandmother, which indicated that she "heard K.G. tell someone on the telephone that [Defendant] didn't rape her and that it was easy to make the jury believe her." (Exhibit "B").

2. A letter dated September 24, 2001, from Amrita Lal, Forensic Laboratory Manager of Relia Gene Technologies, Inc., to Defendant indicating that the Public Defender only requested that the rape kit be examined for the presence of semen.

On December 17, 2002, Judge Feudale granted Attorney Pifer's request to withdraw as Defendant's counsel due to a conflict of interest. Shortly thereafter, Thomas Nell, Esquire was appointed to represent Defendant. As a result, Defendant's appeal, filed in 2000, returned to Superior Court.

On April 23, 2004, Superior Court affirmed Judge Gates' dismissal of Defendant's 1999 PCRA. Addressing Defendant's claim regarding the destruction of evidence with possible exculpatory ramifications, the Court wrote,

> Looking at appellant's second numbered issue, we are mindful of the latter and can quickly dispose of this factually unsupportable allegation. Here, appellant argues that the Commonwealth destroyed evidence of seminal fluid found in the vaginal area of the victim. He states in his appellate brief that "[s]eminal fluid was found by the examining physician per his report . . . John H. Dufendach, M.D., stating 'some dried white material on the public hair'." This is simply a misstatement of the facts. It is true the examining doctor believed there *might* be seminal fluid in this area. The doctor therefore swabbed the area and sent the evidence to the lab. The lab reports declare, however, that an examination of vaginal and rectal swabs "revealed no spermatozoa." This is not a surprise: the victim came forward two days after the rape and had showered and urinated during that

time. Appellant's argument is thus baseless and will not entitle him to any relief. (page 6).

The Court also rejected Defendant's claim that trial counsel was ineffective for not calling Dr. Dufendach to describe lack of injury because K.G. never complained of injury and, therefore, Defendant suffered no prejudice. (pages 7-11).

On July 19, 2007, Defendant filed a pro se Motion For Post Conviction DNA Testimony. On August 2, 2007, the undersigned directed 1) that the Commonwealth file an answer to the motion and 2) that the Commonwealth and the Clerk of Courts preserve any "biological material" pending further direction. The Commonwealth's Answer[8] requested dismissal of the motion because there was no evidence available for testing which could be compared with Defendant's DNA. Defendant responded[9] by claiming there were two rape kits, one from May 4 and another from May 21.[10]

On November 8, 2007, the undersigned wrote to Defendant indicating that his most recent motion would be denied without hearing unless he could provide reasons not to do so. The Court noted that without evidence to compare with Defendant's DNA the statute[11] and case law[12] supported dismissal because there was no reasonable possibility of producing exculpatory evidence. Again, Defendant responded[13] claiming that there was blood on K.G.'s panties and white material found near K.G.'s vagina that could be tested. A hearing was set for January 4, 2008.

---

[8] Filed August 31, 2007.
[9] Filed September 13, 2007.
[10] The May 4, 1996 rape kit is the one taken when K.G. first appeared at Gettysburg Hospital. The existence of the other alleged rape kit comes from a reference in a letter from Attorney Miley to Gene Test Lab, Inc. on October 18, 1996, wherein he was requesting the testing of "a rape kit taken from an alleged sexual assault victim on May 21, 1996."
[11] 42 Pa. C.S.A. §9543.1(d)(2).
[12] *Commonwealth v. McLaughlin,* 855 A.2d 747 (Pa. Super. 2003).
[13] November 26, 2007.

On January 4, 2008, the hearing was continued because Defendant had requested the appointment of counsel. That same day, the Commonwealth filed an Addendum To Answer wherein it acknowledged that,

> In preparation for the January 4 hearing, the Commonwealth conferred with PSP-Gettysburg and discovered that contrary to the factual representation in Superior Court's 1998 opinion, K.G.'s clothing was never destroyed and is still in PSP-Gettysburg's evidence room. The attached property record, received via facsimile on December 18, 2007, confirms the existence of the items. . . (Paragraph 7).[14]

Nevertheless, Commonwealth's position remained unchanged that no evidence existed to compare with Defendant's DNA. Shortly thereafter, Attorney Nell was again appointed to represent Defendant.

On February 14, 2008, Defendant filed another Motion for Post Conviction Collateral Relief. In addition, Attorney Nell moved to withdraw as counsel because Defendant filed a complaint against him with the Disciplinary Board. That request was granted on April 3, 2008, and Robert Chester, Esquire was appointed to represent Defendant.[15]

On June 6, 2008, Defendant raised the potential for other post-conviction issues he wanted to explore and requested a general continuance of the DNA testing request.

On August 14, 2008, Defendant, through counsel, filed an Amended Petition For Post-Conviction Relief. Therein, he claimed after-discovered evidence in the form of recantation by K.G.[16] However, K.G. needed to be located.

On September 16, 2008, Defendant petitioned for removal of Attorney Chester and three weeks later, counsel moved to withdraw. At conference on October 17, 2008, Defendant and counsel agreed to continue working together. Nevertheless, Defendant

---

[14] The property record listed a pair of purple panties, purple bra, purple sweat pants, and black t-shirt.

[15] A pre-hearing conference was also scheduled for May 12, 2008, but continued at Defendant's request until June 6, 2008.

[16] This claim relates to Exhibit "B" attached to Defendant's pro se document filed January 11, 2002. At this point, there was serious question whether such a claim could be raised because it was known by Defendant for seven years. Nevertheless, Defendant was not ready to present this issue for disposition.

renewed his request on February 4, 2009. The Court replied that Defendant's request would be granted but that there was only one local attorney willing to represent him and if he was appointed but subsequently removed, no further attorney would be appointed.[17]

Meanwhile, on February 17, 2009, Defendant, pro se, filed a Petition for the Issuance of Subpoena Duces Tecum For Exculpatory Evidence which requested that subpoenas be issued to Dr. Dufendach and Norse Witushynsky.

On June 30, 2009, Attorney Chester was removed as Defendant's counsel and Stephen Maitland, Esquire appointed in his place. The Court urged Defendant to proceed with his original DNA motion and to present the Court with a proposed laboratory to conduct the testing.

On November 10, 2009, Defendant filed a petition requesting that DNA Diagnostic Center perform the testing. A hearing was held on January 7, 2010. Approval was granted for the testing and protocol established for the exchange of items to be tested.

Despite being represented by counsel, Defendant again, on August 4, 2010, filed a pro se motion seeking to have Dr. Dufendach and Nurse Witushynsky deposed.

On February 11, 2011, the Court wrote to Attorney Maitland and to the District Attorney inquiring about the results of the DNA testing. Attorney Maitland responded on February 23, 2011 that the DNA testing of K.G.'s clothing and rape kit was negative for blood or semen. He also explained that he advised Defendant that deposing Dr. Dufendach and Nurse Witushynsky "would be a fruitless exercise" in light of no evidence being found as a result of testing. Counsel also indicated reluctance to pursue issues he deemed meritless.

Having received no request from counsel to proceed but several requests to do so from Defendant, on September 28, 2011, the Court set Defendant's 2007 Motion for DNA testing for hearing on November 18, 2011. At that time, Defendant presented a copy of the

---

[17] At this point Defendant had been represented by six separate counsel all of whom he found unacceptable.

8

forensic report from DNA Diagnostic Center dated March 18, 2010. (Exhibit One). The Commonwealth moved to dismiss the Motion because no exculpatory evidence was presented which would have changed the outcome of the trial. Defendant, however, indicated that the report failed to mention whether a "pubic hair combing" (Item #5) was tested and requested that the record remain open to clarify whether that was completed. Defendant was granted 20 days to provide the Court with a report.[18]

On January 30, 2012, the Court conducted a conference. It was reported that, in fact, no DNA testing had been done. As a result of discussion, Defendant requested further testing be done on the vaginal swabs (Item 1), the rectal swab (Item 3), the pubic hairs (Item 5), and a purple undergarment (Item 7). Authorization for that testing was granted.

In the meantime, on March 21, 2012, the Court brought to Attorney Maitland's attention the case of *Commonwealth v. Williams,* 35 A.3d 44 (Pa. Super. 2011) and directed that testing cease pending Defendant's ability to demonstrate that he met the threshold requirements for testing described therein. By the time that correspondence was received, the testing had been completed and indicated that no male DNA was detected on the samples. The Court set the matter for further conference on June 18, 2012.

At the conference, Defendant identified three issues he wished to pursue:

1. That the hospital emergency room personnel be deposed;

2. That the Commonwealth withheld or concealed evidence;

3. That the victim did not testify to there being any penetration as required for Rape.[19]

On August 23, 2012, Defendant filed a pro se Motion to Dismiss Based on Newly Discovered Evidence, wherein he alleged that he recently received a document showing

---

[18] By Motion filed December 8, 2011, Defendant requested additional time to keep the record open.
[19] On July 10, 2012, Defendant filed a pro se Objection to Telephone Conference wherein he identified several other issues not relevant to this proceeding.

9

that K.G. was treated by Gettysburg Hospital personnel for a sexually transmitted disease on March 4, 1996.[20] He claims that he never had that disease and, therefore, such evidence would have been beneficial for his defense.

## DISCUSSION

The right to request post-conviction DNA testing and the procedures to follow are set forth in 42 Pa. C.S.A. §9543.1. The statute allows an individual convicted of a crime and serving a sentence to apply to the sentencing court for the performance of forensic DNA testing on specific evidence. The petitioner must present prima facie reasons that if the testing results in exculpatory evidence it would establish the petitioner's innocence. However, the statute does not require the petitioner to show that the DNA testing would provide favorable results before the Court grants the request. It is important to understand that a motion for DNA testing is not the same as a PCRA petition and is not subject to the one-year jurisdictional time bar applicable to other PCRA petitions seeking collateral relief. *Commonwealth v. Williams,* 35 A.2d 44, 50 (Pa. Super. 2011).

In the instant case, whether or not Defendant met the threshold for DNA testing, such testing was authorized. At trial, the jury was made aware that no tangible evidence, such as blood, semen, or hair, linked Defendant to the sexual assault. Allegedly, there was inadequate material to test at that time. Defendant currently claims that further testing could reveal the presence of male DNA that could link someone else to the offense.

In 2009, Defendant selected the lab to perform the testing and made arrangements for the items for testing to be forwarded. The test results were negative for blood or semen. When a question arose concerning the thoroughness of the testing, further testing was authorized. That effort yielded no exculpatory evidence.

---

[20] Chlamydia.

10

Therefore, at this point, Defendant's Motion for DNA testing has been resolved. He requested the testing and the request was granted. To the extent Defendant believes he is entitled to further relief, he is mistaken for the following reasons.

First, after the DNA testing was completed, Defendant had 60 days to file a separate petition seeking PCRA relief on the basis that the testing revealed exculpatory evidence that would have changed the outcome of the trial. 42 Pa. C.S.A. §9543.1(f). Here, the DNA lab report is dated March 18, 2010. Defendant has not filed a separate PCRA petition alleging that the testing produced exculpatory evidence. He is, therefore, precluded from further pursuing that issue.

Second, on August 14, 2008, Defendant filed an Amended Petition For Post-Conviction Relief wherein he claims that K.G. recanted her testimony. The information provided in that regard involved hearsay. Defendant's counsel at that time was unable to locate K.G. or otherwise verify whether K.G. was recanting her trial testimony. To date, the Court has not been advised of any change in that status. As noted above (footnote 16), this claim may not be timely filed. Nevertheless, we note that recantation testimony has long been considered exceedingly unreliable. New trials on the basis of recanted testimony are not to be granted unless the trial court is satisfied that such testimony is true. *Commonwealth v. Loner,* 836 A.2d 125, 135 (Pa. Super. 2003). The statement by Catherine Green that she overheard K.G. say Defendant did not rape her does not satisfy that standard. Even assuming Ms. Green is willing to testify to that effect, her testimony would constitute inadmissible hearsay.[21] The focus of the inquiry is upon the credibility of the recanting witness. The issue of K.G.'s credibility can best be resolved when the Court conducts a full evidentiary hearing and is able to observe the manner and demeanor of the

---

[21] A statement being offered for the truth of the matter asserted (that Defendant did not rape K.G.) for which there is no recognized exception.

11

witness as she delivers her recantation testimony in an adversarial hearing. This is especially true where a judge other than the trial judge is determining whether the defendant is entitled to a new trial. *Commonwealth v. Bernstein,* 455 A.2d 1232, 1234-5(Pa. Super. 1983). Until defense counsel has the opportunity to locate K.G. and verify her recantation, there is nothing to consider.

Third, Defendant's various requests to have Dr. Dufendach and/or Nurse Witushynsky deposed is not before the Court. In 1997, the defendant was given the opportunity to interview those witnesses and to subsequently produce them for trial. In fact, Defendant's counsel represented to Judge Spicer that she spoke to Dr. Dufendach. [See N.T. 3 – 1/12/98]. Even if they had been produced and verified the existence of a whitish discharge at the time of examination subsequent testing did not reveal the presence of any DNA material. Because Defendant was granted DNA testing and there are no other matters pending under the Post Conviction Relief Act which gives this Court jurisdiction there is no basis to compel the production of the information Defendant seeks. Even producing that same information at this time would not entitle Defendant to PCRA relief nor is there any evidence that the Commonwealth hid that information from the defense. Furthermore, nothing prohibits Defendant from seeking information from the hospital medical staff through other means.

Fourth, Defendant's allegation that the Commonwealth withheld or concealed evidence provides no basis for relief. Defendant believes he is entitled to relief because the Commonwealth reported that after initial testing by the State Police lab K.G.'s clothing was destroyed. In early 2008, the Commonwealth discovered that the clothing was available for re-testing. Defendant has offered nothing but supposition that, during the intervening years, exculpatory evidence was destroyed.

12

Fifth, Defendant claims that the Commonwealth destroyed a blood sample. Specifically, in the May 21, 1996 State Police lab report the forensic scientist wrote "The whole blood in Item 2.1 was destroyed." Item 2.1 consisted of a pair of purple panties. This information was known by Defendant prior to trial and, therefore, serves as no basis for post-conviction relief. Furthermore, that undergarment was made available for testing by DNA Diagnostics Center in 2010.

Sixth, Defendant's allegation that the trial judge entered the jury deliberation room improperly serves as no basis for relief. Defendant has not properly raised this issue in a timely-filed PCRA petition. It appears that Defendant is referring to a reference in the trial transcript of August 21, 1997 where Judge Spicer mentioned having contact with the jury the night before when they requested food. [N.T. 281]. There is no suggestion that anything improper occurred and Defendant and his counsel were advised of the interaction. Any claim of error was, therefore, known and when not timely pursued, has been waived.

Seventh, Defendant's allegation that the trial judge's secretary's sister-n-law was a member of the jury does not entitle him to relief because that issue was not raised in a timely manner. Furthermore, Defendant has not averred the identity of this juror, how he is aware of the potential relationship and how the presence of that person on the jury impacted the outcome of his trial.

Finally, Defendant's Motion alleging newly discovered evidence, filed August 23, 2012, forms no basis for relief. Therein, Defendant contends that the Gettysburg Hospital emergency room report dated March 4, 1996 made reference to K.G. being treated for Chlamydia, a sexually transmitted disease. Defendant argues that because he never contracted that disease he could not have penetrated the victim. He suggests that the Commonwealth concealed this information and/or that trial counsel was ineffective for not presenting this information to the jury. There is no basis to consider this motion further.

13

A claim of ineffective assistance of counsel must be raised in a timely manner, 42 Pa. C.S.A. §9545, or the court does not have jurisdiction to consider the merits of the claim for relief. To circumvent the statutory time bar, Defendant must establish one of the exceptions. §9455(b). Here, Defendant claims that the information about Chlamydia is newly discovered. However, to satisfy the statutory threshold "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." §9545(b)(1)(ii). Defendant obviously obtained a copy of the emergency room report.[22] This report was easily discoverable with the exercise of due diligence ever since 1996. To claim this as newly discovered evidence within the context of the statutory exception stretches the reading and meaning of that section beyond its intent.

Furthermore, Defendant's claim of a **Brady** violation is equally meritless. Such a claim arises when the prosecution is in exclusive possession of relevant exculpatory evidence and fails to share that information with the defendant. Defendant has not shown that this report was in the possession of the Commonwealth nor that it was not discoverable by the defense. Furthermore, it is questionable whether the information is exculpatory. Even if K.G. had a sexually transmitted disease does not mean it came from her abuser or that it was transmitted to her abuser. K.G. was not even clear whether she was penetrated vaginally or anally.

Defendant clearly has the right to assert his innocence even in the face of contrary evidence and the verdict of the jury. However, his theory that the Commonwealth has intentionally withheld exculpatory evidence is belied by the record.[23] What Defendant cannot do is raise sundry issues that were previously litigated, waived, time barred, or speculative.

---

[22] Defendant claims the report was received on August 27, 2012, even though he attached a Proof of Service dated August 20, 2012, and the motion was filed on August 23, 2012.
[23] Production of K.G.'s clothing after 12 years suggests transparency not concealment.

14

Accordingly, for the reasons set forth herein, the attached Order is entered.

BY THE COURT,

JOHN D. KUHN
President Judge

mw

15